## Pennsylvania Schuylkill Valley Railroad Co., Appellants, *v.* Philadelphia & Reading Railroad Co.

*Equity—Bill and cross bill—Costs.*

Where a bill and cross bill have both been dismissed, saving however certain rights to plaintiff, the court may in its discretion divide the costs equally between the parties.

*Railroads—Location—Branches—Crossings—Findings of master.*

A court of equity will not restrain a railroad company from constructing a branch upon its own property in order to connect its main line with a wharf and canal, although such branch will cross at grade the location of another railroad, where the master finds that the branch is authorized and practicable and no insuperable obstruction to the other road, and the evidence fails to show that the master's conclusions are wrong.

Argued Feb. 26, 1894. Appeal, No. 349, Jan. T., 1893, by plaintiffs, from decree of C. P. Berks Co., equity docket 1884, No. 341, dismissing bill and cross bill. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM and DEAN, JJ. Affirmed.

Bill to restrain railroad from occupying street. Cross bill to restrain plaintiffs from crossing defendants' tracks at grade until the rights of the parties are determined. An appeal by defendants from the same decree is reported in 157 Pa. 42.

Henry C. G. Reber, Esq., the master, found as follows:

" The master finds that both corporations, plaintiffs and defendants, the litigant parties to this contention, were duly incorporated under the laws of this commonwealth.

" That the Philadelphia & Reading Railroad Company, the defendants, were incorporated under the act of April 4, 1833, P. L. 144, and possessed all the powers and privileges conferred by the said act and its supplements.

" That the West Reading Railroad Company was incorporated under the act of March 20, 1860, P. L. 471, with power 'to construct a railroad from a point on the Lebanon Valley Railroad in the city of Reading, thence by such route as shall be deemed best, and across or along such streets in said city as may be found expedient to use, to a point on Canal street, near the Reading gas works.'

" The master finds that the Berks County Railroad Company

was incorporated under the act of March 29, 1871, P. L. 466, with power ' to construct a railroad from a point on the Wilmington & Reading Railroad at or near Birdsboro, in Berks county, by the most available route to and through the city of Reading, and thence to connect with any railroad or railroads now built in the county of Lehigh.'

"The master finds that on Sept. 30, 1871, an ordinance was passed by the city councils of the city of Reading, authorizing said last-mentioned company to 'occupy Front, Canal and River streets, and also Second from Canal to Penn street, for the purpose of putting down, building and constructing their said railroad, to occupy so much of said streets as may be necessary for their track, sidings, branches to shops, depots, etc., and to pass and repass over their said road when completed with their cars, steam engines,' etc.; and that a map of the location on these streets was on Jan. 29, 1872, approved by the councils of said city and was filed in the city engineer's office.

"The master finds that the said Berks County Railroad Company were, by the act of April 22, 1873, P. L. 834, authorized to construct their railroad along the eastern side of Front and Canal streets, in the city of Reading, and to cross any railroad or sidings on or along the same at grade.

"The master finds that under the acts the Berks County Railroad Company constructed a single track between the track of the West Reading Railroad Company, already constructed, and the curb line on the eastern side of Front and Canal streets; also constructed a single track on the center of River street, and subsequently also constructed a siding on River street, leaving their main track at Court street, and running northward and parallel therewith to Buttonwood street to the Lebanon Valley Bridge.

"The master finds that in 1873 the West Reading Railroad Company was consolidated with and merged in the Philadelphia & Reading Railroad Company.

"That in 1874 the Berks County Railroad, and all its property and franchises, were sold by the sheriff of Berks county, subject to a mortgage; and on Dec. 28, 1874, the purchasers of said railroad organized under the name of the Reading & Lehigh Railroad Company. That on March 11, 1875, the Reading & Lehigh Railroad Company was leased to the Phila-

delphia & Reading Railroad Company, who forthwith took possession and operated the same.    That in 1880 the Berks County Railroad was resold under proceedings of foreclosure on the first mortgage in the circuit court of the United States, Eastern district of Pennsylvania, and the purchasers thereof reorganized under the name of the Schuylkill & Lehigh Railroad Company.    That on April 11, 1883, the Schuylkill & Lehigh Railroad Company leased and demised its entire railroad and all its franchises, powers and privileges to the Philadelphia & Reading Railroad Company, for a term of nine hundred and ninety-nine years.

"That the Schuylkill Navigation Company was incorporated by the act of March 8, 1815, P. L. 72, and that by lease and contract between the Schuylkill Navigation Company and the Philadelphia & Reading Railroad Company, dated July 12, 1870, the premises on which the Reading track at the gristmill was laid, conveyed by Samuel Lippincott to Navigation Company, passed to the Philadelphia & Reading Railroad Company.

"The master finds that the Pennsylvania Schuylkill Valley Railroad Company, plaintiffs in the amended bill and defendants in the cross bill, were incorporated under the provisions of the act of April 4, 1868, and are entitled to all the privileges conferred by the general railroad laws of this commonwealth, with authority to construct a railroad from Philadelphia to the city of Reading.

"That the said Pennsylvania Schuylkill Valley Railroad Company on Aug. 6, 1883, by an ordinance passed by the city of Reading, were authorized 'to occupy, with their branch railroad and its appurtenances, Front street from Penn to Canal street, Canal street from Front to South street, and South street from Canal to Furnace street; and to cross all other streets on the said route, provided that not more than one track be laid on said streets south of Chestnut street, excepting siding necessary for the convenience of manufacturing establishments.'

"The master finds that by the merger of the West Reading Railroad Company on April 4, 1873, into the defendants, and by the lease of the Berks County Railroad to the defendants, the defendants acquired all the rights and franchises of both of the said corporations, and that all the railroad tracks located

and constructed upon the various streets of the city of Reading by these several corporations, as well as the right of their location and use, were acquired by the defendants.

" That the West Reading Railroad had constructed a railroad track, etc., on Front and Canal streets in the city of Reading, its entire length being one and eighty-five one hundredths miles; located and partially constructed a second track on the west side of Front and Canal streets, which was torn up by the Berks County Railroad under cover of an injunction, to enable it to construct its railroad in the same place.

" That the Berks County Railroad, in 1872, attempted to construct its main line on Front and Canal streets in accordance with a city ordinance and location approved by the city, as afore- said. That the Supreme Court, by an injunction, restrained the Berks County Railroad Company not to lay any tracks or use any tracks actually so laid by it. That the Berks County Railroad Company constructed a single track on the eastern side of Front and Canal streets under authority of the special act of April 22, 1873.

" The master finds that at the time of the filing of the bill the Pennsylvania Schuylkill Valley Railroad proposed and had arranged, at and beyond the Lebanon Valley bridge, in the city of Reading, to connect their said railroad with the railroad then about to be constructed by the Reading & Pottsville Railroad Company from the point of connection aforesaid to the borough of Pottsville, in the county of Schuylkill, Pennsylvania.

" That the Pennsylvania Schuylkill Valley Railroad Company, for the purpose of constructing and operating their railroad and branch aforesaid, and the necessary sidings, turnouts, and other appurtenances thereto, had purchased the following real estate, to wit: 'All that certain piece of ground situate on the south side of River road in the city of Reading, bounded on the north by said River road, on the east by property of William H. Ringler, on the south by the river Schuylkill, and on the west by property of the Schuylkill Navigation Company, as aforesaid, containing in front on said River road one hundred and sixty feet more or less.'

" That the Philadelphia & Reading Railroad Company, at the time of the filing of the plaintiffs' bill, operated their railroads lying and being between the points named respectively.

and to which railroads the railroad and branch of the plaintiffs then. being and to be constructed were to be, and are, parallel and competing lines.

" The master further finds in regard to the matters specifically averred in the various paragraphs of the plaintiffs' bill, without reiterating the various acts under which these corporations were incorporated, as of the time of the filing of said bill, that, by virtue of a resolution of the board of directors of the plaintiffs' company, adopted June 11, 1883, the plaintiffs, by corporate action, located the route of their railroad, and that the plaintiffs were about constructing the same between the city of Philadelphia, as averred in the second paragraph of the plaintiffs' bill.

" The master further finds that at the time of the filing of the plaintiffs' bill the route of the plaintiffs' main line was located, in pursuance of a resolution of the board of directors of June 11, 1883, and as appears from the map attached to Albert Hewson's affidavit, and from the testimony of George Van Reed, along and upon Front street from the southern side of Penn street to the River road, and thence along and upon the River road to the Lebanon Valley bridge and beyond in the city of Reading, as averred in the third paragraph of the plaintiffs' bill.

" The master finds from the testimony of George Van Reed, the plaintiffs' engineer, that, on Aug. 11, 1883, a branch road was located and marked with stakes by the plaintiffs on Front street from Penn street to Canal street, on Canal street from Front street to South street, and on South street from Canal street to Furnace street, in the city of Reading, being practically the route that is now occupied by the branch of the Schuylkill Valley Railroad Company on Front and Canal streets, as averred in the fourth paragraph of the plaintiffs' bill, reserving, however, for further consideration and determination, the question raised by the defendants in their answer, as to the plaintiffs' power and authority to construct said branch road.

" The master further finds that the said plaintiffs on Aug. 6, 1883, obtained, by ordinance duly enacted, the consent of the city of Reading to enter upon and occupy the said street for railroad purposes, as averred in the fifth paragraph of the plaintiffs' bill, reserving, however, for further consideration and determination, the question raised by the defendants in their answer as to the validity of said ordinance.

"The master further finds from the agreement of consolidation between the Reading & Pottsville Railroad Company and the Pennsylvania Schuylkill Valley Railroad Company, that, at the time of the filing of the bill, the plaintiffs had proposed and had arranged, at and beyond the Lebanon Valley bridge in the city of Reading, to connect their said railroad with the railroad then about to be constructed by the Reading & Pottsville Railroad Company from the point of connection aforesaid to the borough of Pottsville, in the county of Schuylkill, Pennsylvania, as averred in the sixth paragraph of the plaintiffs' bill.

"The master finds that the Philadelphia & Reading Railroad Company, the defendants, are operating other railroads lying and being between the points named, and to which railroads the railroad and branch so as aforesaid since constructed by the said plaintiffs are parallel and competing lines, as averred in the eighth paragraph of the plaintiffs' bill.

"The ninth, tenth, eleventh, and twelfth paragraphs of the plaintiffs' bill relate more particularly to the controversy between the parties arising out of the defendants' attempting to relay and extend their siding on the River road, and their attempt to extend the same over and across the location of the plaintiffs' main line, in order to connect their railroad system with the Schuylkill Navigation Company's canal, which is controlled and operated by the defendants under a contract and lease.

"To determine the defendants' power and authority in the premises, regard must be had as to the right of their occupancy of the River road, to the use of the siding, and to the object and purpose of the construction.

"The master finds that this siding on the River road was originally constructed by the Berks County Railroad Company in 1872; that it extended from Court street in a northerly direction and parallel with the main track of the Berks County Railroad for a distance of nineteen hundred and forty feet six inches to a point opposite the property now or late of Henry Ruth; that this siding had not been in use for some time prior to the filing of the plaintiffs' bill, but that after the location of the plaintiffs' main line the defendants began to relay the siding, and were about extending it across the plaintiffs' location at Buttonwood street over and upon the defendants' land to the

defendants' wharf at the canal, a distance of eight hundred and thirty-eight feet, when the defendants were restrained by injunction at the instance of the plaintiffs, after which no further efforts were made by the defendants to complete their construction.  The defendants had succeeded in laying the track in a temporary way across the plaintiffs' route and on their own property for a distance of about eight hundred and three feet, and [were about raising the track to grade, placing it in proper shape, and conforming it to their main line and making it convenient and serviceable with their siding, when, in obedience to the writ, their construction ceased.] [6]

" [The plaintiffs, in entire disregard to the injunctional order, unlawfully tore up and removed the defendants' track back to the line of the Ruth property, a distance of about three hundred and thirty feet, placing the materials upon defendants' land.] [7]  The plaintiffs then completed the construction of their main track and have been operating it ever since, whilst the [defendants have been entirely deprived of access by rail to their wharf, and have lost a convenient transferring point for freight from the canal to the railroad, or from the railroad to the canal.] [7]

" At this point on the River road, which is sixty feet wide, there are now located the following tracks, namely, the main line of the Schuylkill & Lehigh Railroad, the defendants' lessor, the defendants' siding, which starts at Court street, in part removed, and the main track of the plaintiffs, from which, at a short distance below Buttonwood street, a siding extends parallel with the main line.

" The plaintiffs contend that the defendants' construction, particularly the crossing over the plaintiffs' route, was in part located upon the River road and upon the plaintiffs' lot, thus appropriating the same whereon the plaintiffs' route was previously located, and that the defendants' track across the plaintiffs' route was at such a declivity with reference to the plaintiffs' proposed railroad track as to render it difficult and impracticable in crossing at grade, that it was an obstruction to the plaintiffs, and was made by the defendants for the purpose of hindering and debarring the plaintiffs from an occupancy authorized by various statutory enactments and by the various ordinances of the city of Reading.   In short, the plaintiffs contend that the

removal of the defendants' track was absolutely necessary in order to enable them to construct their main track.

" The defendants, in answer, aver that their construction of this siding was on their own property and across the plaintiffs' proposed railroad, that they were relaying and extending their track on the River road, which was but a continuance of their Court street siding, across the plaintiffs' route and over their own property, for the purpose of preserving their trade and facilitating their business between their railroad and their canal.

" At this point in dispute the defendants own land on both sides of the River road, and they possess all the rights and privileges of the Berks County Railroad, the power and franchises of its own charter, and the rights, privileges and franchises of the Schuylkill Navigation Company.

" It appears that some time prior to the construction of the plaintiffs' railroad, or rather before its contemplated location on the River road was made known, an effort was made by certain of the city officers to acquire a portion of the road upon which the siding had been located for public use, the siding being then not actually used for railroad purposes. The defendants declined to accede to the request, and refused to permit the removal of the siding by the city.

" The plaintiffs have submitted certain propositions, which the master proceeds to consider :

" ' 1st. That the plaintiffs' railroad between Penn street and the Lebanon Valley bridge was located in March, 1883.' This, in so far as it relates to location, is in accord with the allegation in the third paragraph of the plaintiffs' bill, and, although not admitted by the defendants in their answer, is not denied. The master finds, however, that in point of fact [the plaintiffs, in March, 1883, had simply located their route for a railroad over the ground in controversy by preliminary and tentative surveys; in short, they ran lines and drove stakes, and that therefore there was no actual location or construction of a track over this route in March, 1883.] [2]

" ' 2d. That the defendants at the time of the plaintiffs' location had abandoned their route along there.'

" The testimony of the defendants establishes conclusively that a use was made by the defendants of the track at intervals during the entire period, from the time of the leasing of the

Berks County road to the defendants until the date of this controversy. Mr. Dale, in speaking of this track being used, says this track was always used; that in 1882 he took up a rail with the calculation of putting it back again; that he never did so, because the road was leased shortly afterwards. He further testifies that 'it is a usual thing to move rails around from one part of the road to the other.'

"It also appears in evidence that Mr. Roberts, president of the plaintiffs' company, on March 27, 1884, offered to purchase the siding from the defendants; that no sale was consummated, and that within a few days after the offer was made the defendants commenced the construction of the branch in question.

"The master finds that the defendants had not entirely abandoned this track as claimed by the plaintiffs at the time of the plaintiffs' location.

"'3d. That the siding formerly extending from Court to Buttonwood street was the property of Bushong & Craig.' Mr. Craig received some toll for the use of this siding during a portion of the time, but such testimony, when considered with reference to the testimony of his partner, Mr. Bushong, who disavows all ownership, is therefore entirely insufficient to establish any ownership in Mr. Craig. Mr. Bushong, being examined, testified as follows: 'Q. Do you remember the second track on River street, running from Court out up the river? Who put the track there? A. The Berks County Railroad Company. Q. Something has been said about Craig and you claiming the track as owners? A. It never belonged to us; the Berks County Railroad put down that track.' The master finds that the siding is not the property of Bushong & Craig.

"'4th. That the siding, of which they, the plaintiffs, complained in their bill, which was laid in April, 1884, was made to obstruct the construction of the said plaintiffs' road, and was not practicable for the professed purpose for which this siding was laid.'

"The master finds under the testimony in this case [that the siding in question was a practicable siding for the purposes of defendants' business, and that its construction as contemplated was fully authorized by the corporate power and authority of the defendants.] [5]

"The fact that its construction was stimulated by the contem-

plated construction of the plaintiffs' railroad is unimportant, and the fact that to some extent it may have obstructed the plaintiffs' railroad is likewise immaterial, because it is manifest from the testimony that this obstruction was due entirely to the hastiness of the construction of the siding and to the defendants' inability to properly complete it by reason of the plaintiffs' writ of injunction.   It is also apparent that the rapid descent of the defendants' track at the point in controversy, specially complained of by the plaintiffs, can under the testimony of both parties be easily obviated by properly constructing, grading and aligning said track so that the plaintiffs can readily cross the same, and both the defendants' siding and the plaintiffs' railroad can exist.

" [The master under these findings, based largely upon the testimony not submitted to the court at the time of its decision continuing the preliminary injunction [16 W. N. 165], does therefore not regard the affirmance of that decree by the Supreme Court as decisive of the question.] [9]   ·

" The master is of opinion that on the law and the facts [the plaintiffs have no such standing as to entitle them to a remedy by injunction,] [8] for such a remedy is never granted unless there is a clear right which is violated, resulting in irreparable injury, and when there is no adequate remedy at law.   Such facts have not been established by the plaintiffs.

" The master therefore, in view of the corporate power and authority of the defendants and the facts as ascertained, regards the construction by the defendants as having been but the lawful exercise of an undoubted prior right on the River road, and therefore decides that [the defendants were lawfully authorized to extend their siding and to cross the plaintiffs' location at grade in the construction of their tracks to connect the defendants' railroad system with the Schuylkill Navigation Company's canal, which is controlled and operated by the defendants under a contract and lease.] [10]

" [The master further decides that the siding was a practical one for the purposes of the defendants, and that it was no insuperable obstruction to the plaintiffs' railroad.] " [11]

The remaining portion of the master's report related to the controversy over the occupation of Front and Canal streets decided in plaintiff's favor by the appeal reported in 157 Pa. 42.

The master recommended that both the bill and cross bill should be dismissed, and the costs should be divided equally between the parties.

Exceptions to the master's report, among others as in brackets, were overruled by the court, in an opinion, which, so far as it relates to the controversy involved in this appeal, was as follows, by ENDLICH, J.:

" This cause has been kept by the parties in the hands of the master for a trifle over seven years, with but an occasional and fitful effort to break its profound slumber.   In the meanwhile, the failure to justify by theoretical and conjectural testimony the anticipations of wrong and disaster on which this litigation was originally grounded has given room to a practical demonstration of their baselessness.   The experience gathered in the course of these years has disposed of every substantial difficulty in the case.   All that remains is a question of abstract technical right and of costs.   The master, in his report, recommends the dismissal of both bill and cross bill, and an equal division of the costs of the whole proceeding between the parties.   His report is now before us, together with eighteen exceptions filed on the one side and twenty-three on the other.   In considering these exceptions, few of which merit any discussion, it is unnecessary to rehearse the history of the contending parties with reference to the locality covered by this litigation—of their origins, consolidations, absorptions, locations, constructions, and past strifes.   The material facts concerning these details are fully stated in the report, and have, moreover, been so often threshed out in this court as to render their restatement a wearisome and unprofitable toil.

" Plaintiffs' exceptions, Nos. 5, 6 and 11, relate to the power of the defendant to construct and its bona fides in constructing the branch, its action in relation to which became the occasion of this suit.   In the light of the testimony in the case it can scarcely be open to dispute that the defendant had the power to build the branch at the time when it undertook to do so.   In so far as the legitimacy of the exercise of that power, as dependent upon the bona fides of the attempt, is important here— the element in this case, indeed, mainly dwelt upon by plaintiffs' counsel at the argument,—the finding of the master in favor of the defendants being based not simply upon deductions and in-

ferences from other facts shown or admitted, but also in a large degree upon direct testimony of witnesses examined before him, is entitled to great weight (Phillips's Ap., 68 Pa. 130, 138), and will not be disturbed unless clear error is apparent. The allegations of plaintiffs' bill in the particular now under discussion are explicitly denied by the answer. Bearing in mind, the rules of equity practice as to the amount of evidence necessary to overcome such denial (Ibid. page 139), a review of the testimony fails to show that the master's conclusions are wrong.

" No. 17 is meritorious in so far as it objects to the recommendation to dismiss plaintiffs' bill. The finding of the master that the plaintiff is not entitled to the injunction it prays for is based, in part, upon the fact that the construction of the defendants' branch will not be an insuperable obstacle to the building and operation of plaintiff's railroad, because, as shown by the evidence, the former may be so accomplished as to enable the plaintiff conveniently to cross it. If this is to be a ground for refusing the injunction, and if it is further true, as the master finds, that the plaintiff has the right to build its railroad in the manner claimed, and that the possibility of the crossing referred to is a condition of the coexistence of the defendants' branch and the plaintiffs' road, then, under the general prayer of the bill, the decree ought to be so framed as to conserve whatever equities the plaintiff may have in the premises. . . .

" There remains only the recommendation to divide costs, objected to by the plaintiffs' eighteenth and the defendants' twenty-second exceptions. If both bills were to be wholly dismissed, the logical disposition of the costs would seem to be to let the plaintiff pay those apportionable to the bill and the defendant those apportionable to the cross bill : Baum v. Wicklein, 2 Woodw. 242. But the plaintiffs' bill is not to be wholly dismissed. In view of this result, it seems to me that an equal division of the costs is justified.

" The plaintiff's seventeenth exception will be sustained to the extent indicated in the foregoing opinion ; the remaining exceptions of plaintiffs and the exceptions of defendants will be dismissed ; the report of the master will be approved except in the particular mentioned ; and counsel will prepare and submit the proper decree sec. reg.

" Now, Dec. 5, 1892, this cause came on to be heard at this term and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed as follows, viz.: that the preliminary injunction heretofore granted against the defendants be dissolved and the plaintiffs' bill be dismissed, saving, however, to the plaintiffs the right to construct and maintain their railroad as at present located or constructed, and that the defendants' cross bill be dismissed, each party to pay half the costs."

*Errors assigned* were dismissal of exceptions and decree, quoting them respectively.

*Cyrus G. Derr,* for appellants, cited : Penna. Schuylkill Valley R. R. v. Phila. & Reading R. R., 157 Pa. 42 ; Titusville & Petroleum Centre R. R. v. Warren and Venango R. R., 4 Leg. Gaz. 117 ; Wilkes-Barre & Phila. R. R. v. Danville, Hazleton & Wilkes-Barre R. R., 29 Leg. Int. 373 ; Williamsport & North Branch R. R. v. Phila. & Erie R. R., 141 Pa. 407 ; Pittsburgh, V. & C. Ry. v. Pittsburgh C. & S. L. Ry., 28 Atl. R. 155.

*Geo. F. Baer, Philip S. Zieber* and *Jefferson Snyder* with him, for appellees, cited: Titusville & Petroleum Centre R. R. v. Warren & Venango R. R., 4 Leg. Gaz. 117 ; s. c., 12 Phila. 642.

PER CURIAM, March 12, 1894 :

The facts of this case sufficiently appear in the report of the learned master and opinion of the court below.

A consideration of the questions presented by the specifications of error has led us to the conclusion that there is nothing in either of them that requires a reversal or modification of the decree ; and they have been so fully considered by the learned judge of the common pleas that further elaboration is unnecessary.

The decree is affirmed on his opinion, and it is ordered that the appeal be dismissed with costs to be paid by appellant.